729 So.2d 460 (1999)
Richard L. BLUMBERG, Appellant,
v.
USAA CASUALTY INSURANCE COMPANY, Federal Insurance Company, and The Bruner Insurance Agency, Appellees.
No. 98-1549.
District Court of Appeal of Florida, Fourth District.
March 17, 1999.
Rehearing Denied April 29, 1999.
Eric Lee of Atlas, Pearlman, Trop & Borkson, P.A., Fort Lauderdale, for appellant.
Hinda Klein of Conroy, Simberg & Ganon, P.A., Hollywood, for Appellee-The Bruner Insurance Agency.
WARNER, J.
This is an appeal from a summary judgment in favor of appellee Bruner, an insurance agent, in appellant Blumberg's suit against him for negligent failure to procure coverage. The trial court determined that the statute of limitations ran from the day that Blumberg filed a previous suit against his insurance company for denying coverage for his loss and not from the date when the trial court granted a directed verdict to the company. Under the facts of this case, we affirm the trial court's ruling.
Blumberg's residence was insured for a number of years through St. Paul Insurance Company ("St. Paul"). In December 1989, he bought a new home and contacted Bruner, his insurance agent, to request that St. Paul insure the new property. St. Paul, however, would not insure beach front property. Nevertheless, St. Paul continued to insure the old residence, which Blumberg rented out. Bruner reduced the insurance coverage at the old property to reflect the transfer of Blumberg's possessions to the new home and the premiums were accordingly reduced.
Blumberg had an interest in a sports card store, which proved to be unsuccessful. The store was closed in November 1991, and the inventory of cards, allegedly worth over $100,000, was turned over to Blumberg. He stored the cards in his old residence, which was still insured by St. Paul. As soon as the cards were brought to the old home, Blumberg called Bruner to verify that he had insurance coverage for the cards at that home. He also contacted the insurer of his new home who advised him that he could obtain coverage under his new policy for the cards if not covered under his existing policy. However, Bruner contacted Blumberg on November 9, 1991, and informed him that he had spoken to St. Paul and confirmed that the policy provided the necessary coverage.
On the same day that Bruner called Blumberg to confirm coverage, the old home was broken into and all of the cards were stolen. Blumberg made a claim with St. Paul, but coverage was denied. In the end of 1992, Blumberg filed suit for breach of contract and for promissory estoppel. In the complaint, Blumberg alleged that Bruner was the agent of St. Paul and, as an agent had represented to him that coverage was available under the policy. In the alternative, Blumberg alleged that, acting in reliance on St. Paul's representation of coverage, Bruner failed to secure for him other insurance on the cards. The case went to trial in August of 1996 and resulted in a directed verdict in favor of St. Paul on the breach of contract *461 count because the trial court found that the policy did not cover the loss of the cards. The promissory estoppel count went to the jury who found in favor of Blumberg but awarded only $25,000 in damages. Before judgment was entered, Blumberg dismissed his claim with prejudice.
Blumberg then filed suit against Bruner, now alleging that Bruner was his agent for the procurement of insurance coverage, and Bruner negligently failed to procure insurance to cover the loss of the sports cards. Blumberg alleged that he believed that there was coverage until the trial court ruled adversely to him in the prior suit despite his alternative position in the previous complaint that Bruner did not obtain the requisite additional insurance on the cards. Therefore, he alleged that he was not damaged by Bruner's negligence until August of 1996.
Bruner answered the complaint and raised the statute of limitations, contending that the statute began to run when St. Paul denied coverage, or at least when it denied coverage in its answer to Blumberg's suit. On Bruner's motion for summary judgment, the trial court agreed and granted the motion. From this order, Blumberg appeals.
Blumberg relies on Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990), in which the supreme court held that in a professional malpractice case, parties who had hired Peat Marwick as their accountants to provide tax advice did not suffer redressable harm until the tax court actually entered a judgment against them rather than with receipt of the IRS deficiency notice. Until the underlying legal proceeding had been completed, both Peat Marwick and its clients thought that the accounting advice was correct. The court found that to accept the position that the cause of action against the accountants accrued at the time the IRS first notified the clients of a deficiency would mean that the clients:
would have had to have filed their accounting malpractice action during the same time that they were challenging the IRS's deficiency notice in their tax court appeal. Such a course would have placed them in the wholly untenable position of having to take directly contrary positions in these two actions. In the tax court, the Lanes would be asserting that the deduction Peat Marwick advised them to take was proper, while they would simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that Peat Marwick's advice was malpractice.
Id. at 1326.
The court distinguished its facts from Sawyer v. Earle, 541 So.2d 1232 (Fla. 2d DCA 1989), where Sawyer hired Earle, a lawyer, to represent him in a bar disciplinary proceeding in which a referee recommended an 18 month suspension. Sawyer discharged Earle and replaced him with other counsel. Sawyer was subsequently disciplined in accordance with the referee's recommendations. More than two years after Earle's discharge, but within two years from the final disciplinary action, Sawyer filed a malpractice action against Earle. The second district affirmed the trial court's ruling that the action was barred by the statute of limitations. The second district stated that the cause of action had accrued when Sawyer discharged Earle because, at that point, Sawyer believed his representation had not been proper. By contrast, in Peat, Marwick, the clients believed that the accounting advice was correct and proceeded on that advice to challenge the deficiency notice from the IRS.
We find that the instant case is more similar to Sawyer than to Peat, Marwick. In the instant case, Blumberg alleged in his complaint against St. Paul that Bruner had advised him of coverage when there was none and that Bruner had failed to obtain other coverage. While Blumberg alleged that Bruner was acting as agent of St. Paul, this makes no difference in our analysis. Blumberg alleged that Bruner failed to notify him that coverage for the cards was excluded from the policy. Based on these allegations, we fail to see how Blumberg can contend that he continued to believe Bruner's advice that there was coverage until the trial court entered the directed verdict.
We dealt with an analogous circumstance in Russell v. Frank H. Furman, Inc., 629 So.2d 297 (Fla. 4th DCA 1993). In Russell, an insurance company issued two insurance *462 policies covering a vehicle involved in an accident in which appellant was injured and her husband was killed. Unfortunately, there was a gap in coverage of $500,000 between the primary policy and the umbrella policy, which resulted in the appellant's suit against the insurance company. That litigation resulted in an ultimate ruling by this court determining that the gap in coverage existed. After this court's decision, appellant filed suit against the insurance agent for negligently creating a gap in the insurance coverage. The trial court granted the agent's motion for summary judgment on the basis that the four year statute of limitations had run. On appeal, this court affirmed, distinguishing Peat, Marwick and asserting:
[f]irst, appellants in this case had reason to know that the agent had acted negligently long before the final disposition of the case by this court in 1988. Unlike in Peat, Marwick, the court's ruling here did not make the injury apparent to the appellants for the first time, but rather confirmed what the appellants had reason to know previouslythat there was a gap in the coverage.

Second, in Peat, Marwick the plaintiffs were the defendant's clients, and were being advised by defendant on how to challenge an IRS determination. The clients took the defendant's advice and challenged the IRS determination in the tax court, unsuccessfully. It was not until that determination by the tax court that it became apparent that the accountants were negligent. Here, the appellee insurance agent was not representing the insureds and advising them regarding this very dispute. To us, this is a distinction with a substantial difference.
Id. at 298-99 (emphasis supplied).
Our court determined that the appellants could have alternatively pled that the gap existed and was the negligence of the insurance agent when they learned of its existence. See id. at 298. Similarly, in the instant case, Blumberg alleged in the first count of his complaint against St. Paul that coverage existed and that St. Paul had breached its contract by failing to provide coverage. The second count alleged that Bruner represented that coverage existed, when it did not, and that he failed to secure additional insurance as promised if the existing insurance failed to cover the cards. Thus, Blumberg simply alleged alternative theories of recovery, but failed to join Bruner as a named defendant in the suit.
Blumberg also points to the affidavit of Bruner as proof that he reasonably believed that he had coverage until the trial court ruled against him. However, the affidavit signed by Bruner states only that prior to November 9, 1991, Bruner believed the cards were covered under the policy. The inference that can be made from the affidavit is that after St. Paul denied Blumberg's claim, Bruner no longer thought the cards were covered, and therefore Blumberg could not reasonably believe it either.
We conclude that the statute of limitations began to run when Blumberg filed its action against St. Paul. At that point, Blumberg knew that coverage had been denied, and there was significant reason to believe that the policy did not cover the cards, which is why he alleged an action for promissory estoppel. He could have brought a claim against Bruner for his damages in the same suit. However, he failed to do so. By the time he actually filed the complaint against Bruner, the statute of limitations had run, and the trial court correctly entered judgment in Bruner's favor.
Because of our affirmance of the trial court on the statute of limitations, we do not need to address the remaining point on appeal.
Affirmed.
TAYLOR, J., and SCHACK, LARRY, Associate Judge, concur.