790 So.2d 1061 (2001)
Richard BLUMBERG, Petitioner,
v.
USAA CASUALTY INSURANCE COMPANY, Respondent.
No. SC95740.
Supreme Court of Florida.
July 12, 2001.
*1062 Eric Lee of Atlas Pearlman, P.A., Fort Lauderdale, FL, for Petitioner.
Hinda Klein of Conroy, Simberg & Ganon, P.A., Hollywood, FL, for Respondent.
HARDING, J.
We have for review Blumberg v. USAA Casualty Insurance Co., 729 So.2d 460 (Fla. 4th DCA 1999), which expressly and directly conflicts with this Court's previous opinion in Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. For the reasons expressed in this opinion, we approve the result below.
Blumberg and Peat, Marwick are in conflict regarding when a cause of action for negligence/malpractice accrues. The facts of Blumberg are as follows:
Blumberg's residence was insured for a number of years through St. Paul Insurance Company ("St. Paul"). In December 1989, he bought a new home and contacted Bruner, his insurance agent, to request that St. Paul insure the new property. St. Paul, however, would not insure beach front property. Nevertheless, St. Paul continued to insure the old residence, which Blumberg rented out. Bruner reduced the insurance coverage at the old property to reflect the transfer of Blumberg's possessions to the new home and the premiums were accordingly reduced.
Blumberg had an interest in a sports card store, which proved to be unsuccessful. The store was closed in November 1991, and the inventory of cards, allegedly worth over $100,000, was turned over to Blumberg. He stored the cards in his old residence, which was still insured by St. Paul. As soon as the cards were brought to the old home, Blumberg called Bruner to verify that he had insurance coverage for the cards at that home. He also contacted the insurer of his new home who advised him that he could obtain coverage under his new policy for the cards if not covered under his existing policy. However, *1063 Bruner contacted Blumberg on November 9, 1991, and informed him that he had spoken to St. Paul and confirmed that the policy provided the necessary coverage.
On the same day that Bruner called Blumberg to confirm coverage, the old home was broken into and all of the cards were stolen. Blumberg made a claim with St. Paul, but coverage was denied. In the end of 1992, Blumberg filed suit for breach of contract and for promissory estoppel. In the complaint, Blumberg alleged that Bruner was the agent of St. Paul and, as an agent had represented to him that coverage was available under the policy. In the alternative, Blumberg alleged that, acting in reliance on St. Paul's representation of coverage, Bruner failed to secure for him other insurance on the cards. The case went to trial in August of 1996 and resulted in a directed verdict in favor of St. Paul on the breach of contract count because the trial court found that the policy did not cover the loss of the cards. The promissory estoppel count went to the jury who found in favor of Blumberg but awarded only $25,000 in damages. Before judgment was entered, Blumberg dismissed his claim with prejudice.
Blumberg then filed suit against Bruner, now alleging that Bruner was his agent for the procurement of insurance coverage, and Bruner negligently failed to procure insurance to cover the loss of the sports cards. Blumberg alleged that he believed that there was coverage until the trial court ruled adversely to him in the prior suit despite his alternative position in the previous complaint that Bruner did not obtain the requisite, additional insurance on the cards. Therefore, he alleged that he was not damaged by Bruner's negligence until August of 1996.
Bruner answered the complaint and raised the statute of limitations, contending that the statute began to run when St. Paul denied coverage, or at least when it denied coverage in its answer to Blumberg's suit. On Bruner's motion for summary judgment, the trial court agreed and granted the motion.
Blumberg, 729 So.2d at 460-61. On appeal, the Fourth District Court of Appeal affirmed, reasoning that the statute of limitations began to run when Blumberg filed his action against St. Paul. See id. at 462.
The Blumberg decision is in conflict with Peat, Marwick. In that case, the Lanes in 1976-77 retained Peat, Marwick as their accountants. In 1976, Peat, Marwick recommended that the Lanes invest in a limited partnership. The Lanes invested in that partnership, and in filing their federal income tax returns for 1976 and 1977, they claimed deductions, on the advice of Peat, Marwick, based upon losses of the partnership. In 1981, the IRS sent the Lanes a ninety-day letter, informing them that it had determined that there were deficiencies in their 1976 and 1977 tax returns because of the claimed deductions for the partnership losses. The letter informed them of the amount of the deficiencies and of the procedures available to them for challenging the IRS's deficiency determination. One of the alternatives available to the Lanes was to challenge the IRS's deficiency determination in the United States Tax Court. The Lanes pursued this option and filed their challenge in tax court later that year (1981). In 1983, the Lanes agreed to the entry of a stipulated order which required them to pay a tax deficiency amount agreed to by them and the IRS. In 1985, less than two years after the entry of the tax court order based on the stipulation, the Lanes filed a complaint against Peat, Marwick for accounting malpractice. As one of its affirmative defenses, Peat, Marwick asserted that the claim *1064 was barred by the statute of limitations. The trial court agreed with Peat, Marwick that the Lanes' claim was barred and granted summary judgment in Peat, Marwick's favor.
On appeal, the Third District Court of Appeal reversed, finding that the limitations period commenced when the judgment was entered in tax court. See Lane v. Peat, Marwick, Mitchell & Co., 540 So.2d 922 (Fla. 3d DCA 1989). After granting the petition for review, this Court agreed with the district court:
In this case, the Lanes chose to appeal the IRS's determination to the United States Tax Court, in accordance with the advice given them by Peat Marwick. We find, consistent with the holdings of numerous attorney malpractice cases, that until their tax court action was final, the Lanes did not have an action for malpractice. We reject Peat Marwick's contention that an IRS deficiency determination conclusively establishes an injury upon which to base a professional malpractice action. If we were to accept that argument, the Lanes would have had to have filed their accounting malpractice action during the same time that they were challenging the IRS's deficiency notice in their tax court appeal. Such a course would have placed them in the wholly untenable position of having to take directly contrary positions in these two actions. In the tax court, the Lanes would be asserting that the deduction Peat Marwick advised them to take was proper, while they would simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that Peat Marwick's advice was malpractice. To require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified. Until the tax court determination, both the Lanes and Peat Marwick believed that the accounting advice was correct; consequently, there was no injury. To hold otherwise would mean that an accountant's client would have an action for malpractice as soon as the client received a "Ninety-Day Letter" from the IRS. That result is contrary to common sense and reason. Further, to construe the legislative enactment of the statute of limitations for accounting malpractice in the manner suggested by Peat Marwick would, in our view, be contrary to the legislature's intent in enacting this limitations period.
Peat, Marwick, 565 So.2d at 1326.
In the case below, the district court attempted to distinguish its holding from our holding in Peat, Marwick:
First, appellant in this case had reason to know that the agent had acted negligently long before the final disposition of the case by this court in 1988. Unlike in Peat, Marwick, the court's ruling here did not make the injury apparent to the appellants for the first time, but rather confirmed what the appellants had reason to know previously that there was a gap in the coverage.
Second, in Peat, Marwick the plaintiffs were the defendant's clients, and were being advised by defendant on how to challenge an IRS determination. The clients took the defendant's advice and challenged the IRS determination in the tax court, unsuccessfully. It was not until that determination by the tax court that it became apparent that the accountants were negligent. Here, the appellee insurance agent was not representing the insureds and advising them regarding this very dispute. To us, this is a distinction with a substantial difference.
*1065 Blumberg, 729 So.2d at 462 (quoting Russell v. Frank H. Furman, Inc., 629 So.2d 297, 298-99 (Fla. 4th DCA 1993)). We, however, are not persuaded by this reasoning. The logic behind the Peat, Marwick decision was that a client should not be forced to bring a claim against an accountant prior to the time that the client has incurred damages. A rule that would mandate simultaneous suits would hinder the defense of the underlying claim and prematurely disrupt an otherwise harmonious business relationship. Surely, this same logic should hold true for the client that has an established relationship with a particular insurance agent, especially if the agent maintains that coverage exists even after coverage has been denied by the insurance company. The record in this case demonstrates that Bruner maintained that coverage existed throughout the St. Paul suit. Moreover, the insurer's denial of coverage in this case merely represented the insurer's position on the matter and did not resolve whether damages were incurred either for the benefit or detriment of the insurer, the insured or the agent.
Because we fail to see a distinction in the case below and Peat, Marwick, we are compelled to resolve the conflict that exists between the two cases. Consistent with Peat, Marwick, we hold that, in the circumstances presented here, a negligence/malpractice cause of action accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings or, if there are no related or underlying judicial proceedings, when the client's right to sue in the related or underlying proceeding expires.[1] If a negligence/malpractice action is filed prior to the time that a client's right to sue in the related or underlying judicial proceeding has expired, or if a negligence/malpractice action is filed during the time that a related or underlying judicial proceeding is ongoing, then the defense can move for an abatement or stay of the claim on the ground that the negligence/malpractice action has not yet accrued.[2] The moving party will have the burden of demonstrating that the related or underlying judicial proceeding will determine whether damages were incurred which are causally related to the alleged negligence/malpractice. The determination of this will be for the trial court. Similarly, if a party raises an affirmative defense that a negligence/malpractice action has expired, the party bringing the action may file a reply asserting the avoidance of the statute of limitations due to a related or underlying judicial proceeding.
Applying this reasoning to the present case, we find that the limitations period for the negligence action against the agent did not accrue until the St. Paul proceeding was final.[3] We disapprove of *1066 the Fourth District Court of Appeal's reasoning to the extent that it is inconsistent with this holding.
Nevertheless, we conclude that Blumberg's action against Bruner is still barred in this case due to the principles of judicial estoppel. "Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings." Smith v. Avatar Properties, Inc., 714 So.2d 1103, 1107 (Fla. 5th DCA 1998). The doctrine prevents parties from "making a mockery of justice by inconsistent pleadings," American Nat'l Bank v. Federal Deposit Ins. Corp., 710 F.2d 1528, 1536 (11th Cir. 1983), and "playing fast and loose with the courts." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990).
In Chase & Co. v. Little, 116 Fla. 667, 156 So. 609, 610 (1934), this Court stated the following regarding the judicial estoppel doctrine:
The rule applicable to judicial estoppel is stated in 21 C.J. 1228 et seq., as follows:
A claim made or position taken in a former action or judicial proceeding will, in general, estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party.
In order to work an estoppel, the position assumed in the former trial must have been successfully maintained. In proceedings terminating in a judgment, the positions must be clearly inconsistent, the parties must be the same and the same questions must be involved. So, the party claiming the estoppel must have been misled and have changed his position; and an estoppel is not raised by conduct of one party to a suit, unless by reason thereof the other party has been so placed as to make it to act in reliance upon it unjust to him to allow that first party to subsequently change his position. There can be no estoppel where both parties are equally in possession of all the facts pertaining to the matter relied on as an estoppel; where the conduct relied on to create the estoppel was caused by the act of the party claiming the estoppel, or where the positions taken involved solely a question of law.
Based on the facts of the present case, we conclude that this is a proper case for the application of the judicial estoppel doctrine. Prior to the time that Blumberg filed the action against St. Paul, St. Paul made a of number of settlement offers in order to resolve the sports card claim, all of which were rejected by Blumberg. Blumberg's claim against St. Paul consisted of two counts: breach of contract and promissory estoppel. The trial court granted a directed verdict against Blumberg on the breach of contract claim. However, the promissory estoppel claim went to the jury, with the jury ultimately rendering a verdict in favor of Blumberg in the amount of $25,000. Apparently, this award was not sufficient to beat St. Paul's offer of judgment and, therefore, after St. Paul moved to tax attorneys' fees, Blumberg entered into a voluntary stipulation dismissing his promissory estoppel claim against St. Paul with prejudice in exchange for St. Paul's agreement to forego its attorneys' fees.
This case is exactly the type of scenario for which the judicial estoppel doctrine was intended. Blumberg is attempting "to make a mockery out of justice" by asserting inconsistent positions in the St. Paul suit (where he claimed that coverage existed and prevailed) and the Bruner suit (where he claimed that coverage did not exist).
*1067 Blumberg argues that judicial estoppel is inappropriate in this case for two reasons. First, he claims that he did not "successfully maintain" his promissory estoppel claim in the St. Paul suit. Second, he claims that the doctrine cannot be applied because there was not mutuality of parties in both suits. We disagree.
The favorable jury verdict satisfies the requirement that the party successfully maintain the action in the first suit. See Palm Beach Co. v. Palm Beach Estates, 110 Fla. 77, 148 So. 544, 549 (1933) (stating that a suit can be successfully maintained by verdict, findings of fact, or admissions in an adversary's pleadings operating as a confession of facts he or she has alleged). The mere fact that Blumberg voluntarily dismissed his claim after the jury rendered its verdict does not negate the fact that a factfinder determined that St. Paul was liable under a promissory estoppel theory. In W.R. Grace & Co. v. Geodata Services, Inc., 547 So.2d 919, 924 (Fla.1989) (quoting Restatement (second) of Contracts § 90 (1979)), this Court set forth the basic elements of promissory estoppel:
A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
Two years earlier, in Crown Life Insurance Co. v. McBride, 517 So.2d 660, 662 (Fla.1987), we held that promissory estoppel may be utilized to create insurance coverage in situations where refusing to do so would sanction fraud or other injustice. In the present case, the jury returned a favorable verdict on Blumberg's promissory estoppel claim, which, in essence, means that coverage existed for the cards. After this determination was made, Blumberg could not turn around in the Bruner suit and claim that coverage did not exist.
Additionally, although Blumberg is correct in pointing out that judicial estoppel normally requires mutuality of parties, there are exceptions to this requirement. In West v. Kawasaki Motors Mfg. Corp., 595 So.2d 92, 94 (Fla. 3d DCA 1992), the district court stated the following regarding the mutuality of parties requirement in the context of res judicata and collateral estoppel: "Florida courts have on occasion recognized exceptions to the identity of parties requirement under the res judicata or collateral estoppel doctrines where special fairness or policy considerations appear to compel it." See also Zeidwig v. Ward, 548 So.2d 209 (Fla.1989) (allowing defendant lawyer in malpractice suit to assert defense of collateral estoppel based on prior criminal judgment even though he was not a party to the post-judgment criminal proceeding). We see no reason why this exception should not be extended to the doctrine of judicial estoppel. Further, we find that special fairness and policy considerations compel the exception in this case. The mere fact that Bruner was not a named party in the St. Paul suit does not prevent the application of the judicial estoppel doctrine in this case.
In sum, we hold that the doctrine of judicial estoppel bars Blumberg's claim against Bruner. The courthouse should not be viewed as an all-you-can-sue buffet, in which litigants can pick and choose which verdicts they want and which they do not. Blumberg certainly had the option to voluntarily dismiss the promissory estoppel claim after he received a successful jury verdict. But after receiving that successful verdict, he did not have the option of pursuing an entirely inconsistent position in a subsequent suit.
*1068 Accordingly, for the reasons expressed in this opinion, we approve the result below, albeit on different grounds than the ones relied on by the district court.
It is so ordered.
WELLS, C.J., and LEWIS and QUINCE, JJ., concur.
PARIENTE, J., dissents with an opinion, in which SHAW and ANSTEAD, JJ., concur.
PARIENTE, J., dissenting.
I respectfully dissent because in my opinion a cause of action against an insurance agent for negligent failure to obtain coverage accrues when the insurer denies coverage and the insured has reason to know that coverage does not existrather than when there is a final judicial determination against the insurer as to the coverage issue. I would point out that the original complaint against the insurer in this case alternatively alleged both breach of contract and promissory estoppel. In fact, Blumberg alleged in his original complaint against the insurer-that Bruner, the insurance agent, had "advised him of coverage when there was none and that Bruner had failed to obtain other coverage." Blumberg v. USAA Cas. Ins. Co., 729 So.2d 460, 461 (Fla. 4th DCA 1999). Thus, by the time Blumberg filed his complaint against the insurer, Blumberg had both knowledge of the harm and a redressable injury.
Furthermore, I find difficulty with the majority's reliance on Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990), because one of the key rationales for that decisionthe opportunity for the professional to correct the error does not exist in the context of insurance disputes. Implicit in the Peat, Marwick line of decisions is the concern that plaintiffs should allow their accountants and attorneys the opportunity to correct their mistakes before the plaintiff initiates a malpractice claimand that no redressable harm exists until that time. Because there is no redressable harm if the accountant or the attorney resolves the underlying litigation favorably, any harm is speculative until the resolution of the separate and unrelated litigation. This is an important concern that serves the interest of judicial economy as well as fairness to both sides in the professional malpractice context.
In contrast, in the insurance coverage context, the harm is the denial of coverage this is not speculative; it is an immediate and real harm. The insurance agent cannot "correct" the failure to provide coverage. Therefore, the opportunity for remediation, which strongly supports a delay in the accrual of the statute of limitations in malpractice actions against attorneys and accountants to determine if redressable harm exists, simply does not apply in this circumstance.
I further find the policy reasons behind the Peat, Marwick reasoning to be inapplicable under these circumstances. In cases involving accountant or attorney malpractice, to require the plaintiff to sue the professional before the resolution of the underlying litigation would place the client in

the wholly untenable position of having to take directly contrary positions in these two actions. In the tax court, the Lanes would be asserting that the deduction Peat Marwick advised them to take was proper, while they would simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that Peat Marwick's advice was malpractice. To require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice *1069 is illogical and unjustified. Until the tax court determination, both the Lanes and Peat Marwick believed that the accounting advice was correct; consequently, there was no injury. To hold otherwise would mean that an accountant's client would have an action for malpractice as soon as the client received a "Ninety-Day Letter" from the IRS. That result is contrary to common sense and reason.
Id. at 1326 (emphasis added).
In contrast, in most cases involving insurance agents, the insurance agent is neither representing nor advising the insured regarding the insurance coverage dispute even if there is an allegation that the agent acted as the insured's agent at the time that coverage was procured. I agree with the Fourth District that this fact constitutes a "substantial difference." Blumberg, 729 So.2d at 462 (citing Russell v. Frank H. Furman, Inc., 629 So.2d 297, 298 (Fla. 4th DCA 1993)).
Another reason why the rationale behind Peat, Marwick is justified in the context of attorney and accountant malpractice claims is that to require a client in an accountant or attorney malpractice case to simultaneously sue his or her attorney or accountant in a separate and unrelated proceeding would in fact place the client in the position of having to assert inconsistent positions in separate and completely unrelated litigation with separate and unrelated issues. However, unlike the case of attorney or accountant malpractice, in the context of suits against insurance agents, there are cases where the plaintiff would not risk asserting inconsistent positions in separate and unrelated lawsuits, but would in fact be asserting interrelated claims in the same lawsuit stemming from the denial of coverage.
Today's majority opinion also constitutes a departure from actual practice and prior case law. Florida courts have long permitted plaintiffs to simultaneously bring causes of action against both an insurer and an agent when a coverage dispute arises. See, e.g., McLeod v. Barber, 764 So.2d 790 (Fla. 5th DCA 2000); Daniel v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n, 718 So.2d 936 (Fla. 3d DCA 1998); Warren v. Dairyland Ins. Co., 662 So.2d 1387 (Fla. 4th DCA 1995); Time Ins. Co. v. Neumann, 634 So.2d 726 (Fla. 4th DCA 1994); Russell v. Frank H. Furman, Inc., 629 So.2d 297, 298 (Fla. 4th DCA 1993); Hardy Equip. Co. v. Travis Cosby & Assocs., 530 So.2d 521 (Fla. 1st DCA 1988); Wolfe v. Aetna Ins. Co., 436 So.2d 997 (Fla. 5th DCA 1983). Further, often times the cause of action against the insurance agent is for both breach of contract and negligence. See, e.g., Schuck v. Habicht, 672 So.2d 559, 562 (Fla. 4th DCA 1996); Oliver v. Severance, 542 So.2d 408, 409 (Fla. 1st DCA 1989); Robinson v. John E. Hunt & Assocs., 490 So.2d 1291, 1293 (Fla. 1st DCA 1986). The statute of limitations for a breach of contract action begins to run when the cause of action accruesi.e., when the insurer breaches the obligation to pay. See Passman v. State Farm Fire & Cas. Co., 779 So.2d 323, 325 (Fla. 2d DCA 1999); State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818, 821 (Fla.1996); Levy v. Travelers Ins. Co., 580 So.2d 190, 191 (Fla. 4th DCA 1991). Moreover, if the insurer puts the insured on notice that it will no longer pay benefits, this constitutes an anticipatory repudiation, giving rise to a cause of action for breach of contract and commencing the running of the statute of limitations. See Peachtree Cas. Ins. Co. v. Walden, 759 So.2d 7, 8 (Fla. 5th DCA 2000).[4]
*1070 Additionally, it is unclear under the majority's decision how the statute of limitations would operate when the insured sues the insurer and the agent and alleges both tort and breach of contract claims against the agent. Will the majority require that the contract claims be separated from the tort claims, allowing the contract claim to be brought at the time the insurance dispute is litigated and the negligence claim brought only after the insurance dispute is resolved? Surely notions of judicial efficiency dictate against such a result, particularly where the same evidence will be presented for both causes of action. Moreover, such a requirement could violate the rule against splitting causes of action, which requires that a plaintiff "raise all available claims involving the same circumstances in one action." Department of Agric. & Consumer Servs. v. Mid-Florida Growers, Inc., 570 So.2d 892, 901 (Fla.1990).[5]
Further, in many cases, the insured sues both the insurer and the agent for separate causes of action based upon the same underlying factual situation. See, e.g., McLeod, 764 So.2d at 791 (insured sued agent in tort and sued insurer in both tort and contract); Time Ins. Co., 634 So.2d at 728 (insured sued insurer for breach of contract and negligence and sued agent for failure to obtain coverage and negligence); Durbin Paper Stock Co. v. Watson-David Ins. Co., 167 So.2d 34, 35 (Fla. 3d DCA 1964) (insured sued agent for negligence in failing to place insurance policies and insurer for breach of contract). In these circumstances, the interests of judicial economy in fact would best be served by the trier of fact considering both the coverage claim and the insurance agent's potential negligence in failing to procure coverage in the same action. In some cases, the answer to the first and second issue may depend on resolution by the trier of fact of whether the agent was acting as either the agent for the insurer or the insuredor acting in both capacities. See, e.g., Glynn v. New Hampshire Ins. Co., 578 So.2d 36, 36 (Fla. 4th DCA 1991). Thus, the operative facts in the two causes of action may be intertwined. In fact, the case before us is one where the insured could have elected to plead in the alternative regarding whether Bruner was his agent or the insured's agent in the original lawsuitin either case the underlying facts of both causes of action were intertwined.[6]
For example, in Durbin Paper Stock, the insured sued both the insurer and the insurance agent, who was a general lines agent for the insurance company. 167 So.2d at 35. The cause of action against the insurer was for breach of an oral insurance contract and the cause of action against the agent was for negligence in failing to place the policiesclearly a *1071 pleading in the alternative. See id. Given the practice of joining both the insurer and the agent in the same action, I am uncertain how the majority's bright-line rule affects the reasoning of cases such as Durbin Paper Stock.
The majority attempts to address the issue of when a lawsuit against an agent is prematurely brought by stating
if a negligence/malpractice action is filed prior to the time that a client's right to sue in the related or underlying judicial proceeding has expired, or if a negligence/malpractice action is filed during the time that a related or underlying judicial proceeding is ongoing, then the defense can move for an abatement or stay of a claim on the ground that the negligence/malpractice action has not yet accrued. The moving party will have the burden of demonstrating that the related or underlying judicial proceeding will determine whether damages were incurred which are causally related to the alleged negligence/malpractice. The determination of this will be for the trial court.
Majority op. at 1065. I take this to mean that if the issue of insurance coverage remains pending, the trial court would be obligated to either stay or abate the action against the agent as premature. Thus, the option of the insured to sue both the insurer and the agent in one lawsuit is eliminated.
For all these reasons, I would approve the Fourth District's decision below.
SHAW and ANSTEAD, JJ., concur.
NOTES
[1] In Blumberg, this would have been when the underlying litigation against St. Paul was final or, if Blumberg had declined to file a suit against St. Paul, when his right to sue St. Paul expired. In Peat, Marwick, this would have been when the underlying tax court litigation was final or, if the Lanes had declined to appeal the IRS'"Ninety-Day Letter" in tax court, when their right to appeal the IRS' "Ninety-Day Letter" expired.
[2] "The proper remedy for premature litigation `is an abatement or stay of the claim for the period necessary for its maturation under the law.'" Bierman v. Miller, 639 So.2d 627, 628 (Fla. 3d DCA 1994) (quoting Angrand v. Fox, 552 So.2d 1113, 1115 (Fla. 3d DCA 1989)).
[3] As pointed out by the district court, Blumberg asserted in the negligence action against Bruner that Bruner was acting as his agent for the procurement of insurance coverage. In this context, the negligence action against Bruner is analogous to the malpractice action brought against the accountants in Peat, Marwick.
[4] Unlike the statute of limitations for a negligence claim, which is four years, see § 95.11(3)(a), Fla. Stat. (2000); Hardy Equip. Co., 530 So.2d at 522, the statute of limitations for a breach of contract claim is five years. See § 95.11(2)(b), Fla. Stat. (2000); Passman, 779 So.2d at 325.
[5] In Mid-Florida Growers, 570 So.2d at 901, we noted that

The rule against splitting causes of action is predicated on the following basic policy considerations: (1) finality in court cases promotes stability in the law; (2) multiple lawsuits arising out of a single incident are costly to litigants and an inefficient use of judicial resources; and (3) multiple lawsuits cause substantial delay in the final resolution of disputes.
These policies support the notion that an insured should not be precluded from simultaneously suing the insurer and the agent when the insured alleges both tort and breach of contract claims against the agent.
[6] In those cases where the facts are not intertwined, the trial court could sever the claims, adjudicating the underlying coverage dispute first. See generally Fla. R. Civ. P. 1.270(b).