279 So.2d 851 (1973)
Donald C. EDWARDS and Daisy I. Edwards, Petitioners,
v.
Edwin I. FORD et al., Respondents.
No. 42609.
Supreme Court of Florida.
June 6, 1973.
Rehearing Denied July 31, 1973.
Robert F. Nunez, St. Petersburg, for petitioners.
Malcolm V. McKay, of Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, and Harold S. Wilson, Clearwater, for respondents.
McCAIN, Justice.
By petition for certiorari we review an opinion by the Second District Court of Appeal reported at 263 So.2d 654 which is in conflict with Downing v. Vaine, Fla. App. 1969, 228 So.2d 622, thereby vesting jurisdiction with us pursuant to Fla. Const., Article V, § 3(b)(3), F.S.A. Oral argument has been dispensed with.
The facts are relatively simple. Respondents are a firm of attorneys practicing law in Florida. Petitioners at one time were their clients. It was out of the attorney-client relationship that the instant lawsuit arose. On November 6, 1962, petitioners and one Baseline Manufacturing Corporation entered into an "Agreement for Purchase, LeaseBack and Repurchase" prepared for the parties by respondent Ford. In March, 1963, petitioners were advised by attorneys for Baseline that the agreement was probably usurious. At this point, petitioners allege, Wilson, another member of respondent firm, agreed to take whatever steps might be necessary to correct the injurious effect of the documents, free of charge. Certainly by October, 1963, petitioners knew and/or realized the usurious nature of their contracts. Next, Baseline brought suit against petitioners seeking to have the deed from Baseline to petitioners vacated, to have the deed declared a mortgage and to assess penalties for usury. Evantually, the ensuing litigation was terminated by a trial in which petitioners prevailed. *852 An appeal followed but it was dismissed after a compromise settlement in 1967. (The same usury dispute was raised as a result of two other contracts written by Ford between petitioners and two other parties. Lawsuits followed in both cases. In one the contract was ultimately determined, by the DCA-2, to be usurious.) Petitioners alleged that due to compromise agreements in all cases necessitated by the lawsuits, they sustained a loss in all three cases.
Subsequently, attorney Wilson, on behalf of respondent law firm, submitted to petitioners a bill for the legal services rendered in defending the usury suits. When petitioners failed to pay, respondents, on March 4, 1968, filed suit against petitioners for attorneys fees. On June 5, 1968, petitioners answered, asserting numerous affirmative defenses relating to respondents' negligence in preparing the original contracts, and a counterclaim alleging malpractice on the part of respondent firm.
By order dated November 6, 1969, the trial judge dismissed the counterclaim for malpractice, stating:
"That the Statute of Limitations for an action against an attorney for malpractice commences to run at the time the services are rendered by the attorney and that, therefore, defendants' counterclaim for money judgment in their favor against plaintiffs is barred by the Statute of Limitations." (Emphasis supplied)
The DCA-2 affirmed per curiam without opinion, which in effect adopted the theory of the trial judge.
Therefore, we are concerned with whether the statute of limitations involving an action for malpractice against an attorney commences to run "at the time the services are rendered."
A more palatable solution to this vexatious issue comes to us through the very fine and analytical opinion written by Judge Wigginton of the First District Court of Appeal in Downing, supra, which reads in pertinent part, as follows:
"Defendant attorney at law has appealed a final judgment rendered against him in a malpractice action in which he was charged with negligence in the handling of a civil action for plaintiff. The trial resulted in a verdict by which the jury awarded plaintiff damages in the sum of $10,000.00. The principal point on appeal challenges the correctness of the trial court's ruling which denied defendant's motion for directed verdict based upon his defense that the action was barred by the statute of limitations.
"The sole question for our determination is when did appellee's cause of action against appellant accrue under the facts and circumstances of this case. If, as contended by appellant, the cause of action accrued on the date appellee's action for malicious prosecution against the lumber company in the State of New York was barred by the statute of limitations on March 24, 1964, then the action sub judice was untimely filed and is therefore barred by the New York three-year statute of limitations. If, however, as contended by appellee, the cause of action did not accrue to appellee until he was notified by his attorneys on March 20, 1967, that his action against the lumber company had theretofore been dismissed on February 2, 1967, because it was untimely filed, then the action sub judice was timely filed on October 23, 1968, and would not be barred by the three-year statute of limitations.
"A careful examination of the decisions which adopt the general rule ... fails to disclose the rationale which gives credence to and justifies the rule. The effect of the rule is to hold that an injured client must commence the action against his attorney for malpractice within the period of limitations after the negligent act is committed, even though the client is totally unaware of the fact that the negligent act giving rise to the *853 cause of action had occurred. We find it impossible to rationalize how an injured client can be required to institute an action within a limited time after his cause of action accrues if he has no means of knowing by the exercise of reasonable diligence that the cause of action exists. It occurs to us that one should be held in fault for failing to timely exercise a right only if he knows, or by the exercise of reasonable diligence should have known, that such right existed. It is our view that the general rule above elucidated casts upon a client an unfair burden of knowing as much about the intricacies of the law as does the attorney whom he employs to protect his legal rights. In order to comply with the rule, the injured client would have to be sufficiently versed in the law to know exactly how and on which date his attorney committed an act of negligence in the prosecution or maintenance of the legal matters entrusted to his care in order that an action against the attorney might be instituted before being barred by the statute of limitations. We cannot agree with legal philosophy which adheres to such an unreasonable principle of law.
"... the event which triggers the running of the statute of limitations is notice to or knowledge by the injured party that a cause of action has accrued in his favor, and not the date on which the negligent act which caused the damages was actually committed.
"In the case sub judice appellant was employed to represent appellee in his malicious prosecution action against the lumber company on October 28, 1963. Appellant failed to file the action before the statute of limitations barred the action on March 24, 1964. After the action was finally commenced on June 12, 1964, appellant continued to handle it through the pleading and deposition stages over a long period of months, never once advising appellee that the action was untimely filed and its maintenance barred by the applicable statute of limitations. It was not until March 20, 1967, that appellee had any knowledge of appellant's negligence in failing to timely file the action which resulted in the summary judgment of dismissal. It therefore affirmatively appears that appellee did not know, nor by the exercise of reasonable diligence should he have known, that appellant's act of negligence occurred on March 24, 1964, upon his failure to timely file the action against the lumber company. Appellee had no knowledge of the fact that a cause of action had accrued in his favor against his attorney until his action against the lumber company was dismissed and he was so notified on March 20, 1967. Under the circumstances it is our view, and we so hold, that the statute of limitations on appellee's cause of action against appellant for damages resulting from the latter's malpractice did not commence to run until appellant's act of negligence became known to appellee on March 20, 1967."
Accordingly, the rationale of Downing is adopted by this Court and to the extent that the quoted portion of the trial judge's judgment is in conflict therewith, said conflicting language is hereby expunged from the record. See also State v. Pierce, Fla. 1967, 201 So.2d 886.
However, it sufficiently and clearly appears from the record that petitioners had knowledge of the fact that a cause of action had accrued in their favor during 1963, with accompanying damages (even though perhaps minimal at that point). Suit could have then been filed, but petitioners chose to wait until 1968 at which time they filed their counterclaim for malpractice. Unfortunately, for petitioners, the statute of limitations had run.
Thus, the ultimate conclusion and judgment of the trial judge to dismiss the disputed counterclaim was correct.
*854 Petitioners' remaining points are without merit.
Certiorari is granted and the per curiam affirmance by the District Court of Appeal is affirmed for the foregoing reasons.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN and DEKLE, JJ., concur.