HARDING, J.
We have for review Taracido v. Perez-Abreu, Zamora & De La Fe, P.A., 705 So.2d 41 (Fla. 3d DCA 1997), which is in apparent conflict with this Court’s opinion in Edwards v. Ford, 279 So.2d 851 (Fla.1973). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. For the reasons expressed below, we apprové the decision of the district court in Taracido and recede from Edwards to the extent that it conflicts with the reasoning of this decision.
The facts of Taracido are as follows. Manuel Taracido was an officer, director, and half owner of Medical Centers of America, Inc. (MCA), a marketing company for, and owner of, medical centers. In 1988, Charles Childers bought stock in two medical centers from Taracido. Perez-Abreu, Zamora, & De La Fe (Attorneys) represented Taracido and MCA (Clients) and drafted the agreements used in the sale. Childers became dissatisfied with the medical centers’ diminished profits and threatened to sue. The parties negotiated *1053 for return of the stock, with the Clients depositing $20,000 in the Attorneys’ escrow account. The Clients subsequently refused to repurchase the shares and a dispute developed over the funds held in escrow.
The Attorneys interpleaded the funds, naming MCA, Taracido, and Childers as defendants. In 1990, Childers filed a cross-claim and third-party complaint against the Clients, asserting fraud; negligence; violations of sections 517.301 and 517.211, Florida Statutes; civil theft; breach of fiduciary duty; and breach of the settlement agreement. Childers alleged that the Clients had misrepresented the centers’ net worth, the profitability of third-party contracts, and the use for the funds received in the stock sale. Shortly after being served with the complaint from Childers, the Clients met with a litigation attorney, Norman Malinski, who told the Clients that the stock purchase agreements violated the Florida Securities and Investor Protection Act and that the agreements were defective because they failed to include disclosure provisions. In January 1992, the parties agreed upon a settlement. In the settlement agreement, the Clients stated their belief that “Child-ers may prevail in the pending Litigation by virtue of an asserted violation of the provisions of Chapter 517, Florida Statutes.”
In December 1993, the Clients sued the Attorneys for malpractice. The complaint alleged that the Attorneys failed to advise the Clients that they had to disclose their financial condition and that the sale agreement must acknowledge such disclosures. It also asserted that “the Childers litigation alleged that the [Clients] had failed to disclose the financial condition of the companies in which the stock was being purchased and failed to disclose the use of proceeds of the sale of the stock. Such failures were the direct result of the [Attorneys] failing to properly advise the [Clients] as to the necessary disclosures.” The Clients alleged as damages the amount of their settlement with Childers and the expense of defending the shareholder litigation.
The Attorneys moved for summary judgment on two grounds: (1) as a matter of law, the Attorneys did not commit malpractice, and (2) the statute of limitations had expired. The parties later agreed that summary judgment was inappropriate on the malpractice issue. The court held a hearing on the second ground and determined that the limitations period had expired. The court granted summary judgment in the Attorneys’ favor. On appeal, the district court reversed, finding that “the statute of limitations in prior transactional legal malpractice actions begins to run when related third party litigation is concluded.” Taracido, 705 So.2d at 42.
The holding of the district court below is in apparent conflict with this Court’s previous decision in Edwards, which was also a .transactional malpractice case. In Edwards, a law firm prepared a contract for one of its clients in 1962. The clients were later notified in 1963 by the other party to the contract that the contract was probably usurious. The clients alleged that one of the members of the law firm agreed to correct, the contract, free of charge. The other party subsequently sued the clients in 1965 and the matter was eventually settled pursuant to a compromise agreement in 1967. In 1968, the law firm sued for expenses incurred in defending the clients in the lawsuit and the clients counterclaimed alleging malpractice. The trial judge dismissed the counterclaim, finding that the statute of limitations began to run at the time the services were rendered and had therefore expired. The district court affirmed and this Court accepted certiora- *1054 ri. This Court held that even though the related or underlying judicial proceeding was not complete until 1967, the cause of action accrued in 1963, and therefore the statute of limitations began to run at that time. See Edwards, 279 So.2d at 853.
The resolution of the conflict in this case is controlled by this Court’s recent opinion in Blumberg v. USAA Casualty Insurance Co., 790 So.2d 1061 (Fla.2001). In Blumberg, this Court held:
Consistent with Peat, Marwick, we hold that, in the circumstances presented here, a negligence/malpractice cause of action accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings or, if there are no related or underlying judicial proceedings, when the client’s right to sue in the related or underlying proceeding expires. If a negligence/malpractice action is filed prior to the time that a client’s right to sue in the related or underlying judicial proceeding has expired, or if a negligence/malpractice action is filed during the time that a related or underlying judicial proceeding is ongoing, then the defense can move for an abatement or stay of the claim on the ground that the negligence/malpractice action has not yet accrued. The moving party will have the burden of demonstrating that the related or underlying judicial proceeding will determine whether damages were incurred which are causally related to the alleged negligence/malpractice. The determination of this will be for the trial court. Similarly, if a party raises an affirmative defense that a negligence/malpractice action has expired, the party bringing the action may file a reply asserting the avoidance of the statute of limitations due to a related or underlying judicial proceeding:
Slip op. at 7-8 (footnotes omitted). Applying this reasoning to the present case, we conclude that the cause of action against the Attorneys did not accrue until the related or underlying judicial proceeding involving Childers and the Clients settled.
We address one other argument raised by the Attorneys in this case. The Attorneys assert that redressable harm was established when the Clients were assessed attorneys’ fees to defend the related or underlying judicial proceeding. They allege that the proceeding will have no bearing on these damages and therefore the limitations period began to run at the time of the assessment. We disagree. Initially we point out that in some circumstances the related or underlying judicial proceeding may have a bearing on such damages, as the possibility exists that if the clients prevail, the clients can collect the attorney’s fees from the losing party pursuant to a statutory or contractual provision. See Dade County v. Pena, 664 So.2d 959, 960 (Fla.1995) (“This Court follows the ‘American Rule’ that attorney’s fees may only be awarded by a court pursuant to an entitling statute or an agreement of the parties.”). Moreover, this Court’s decisions in Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990), Silvestrone v. Edell, 721 So.2d 1173 (Fla.1998), and Blumberg were intended to: (1) provide certainty and reduce litigation over when the statute starts to run and (2) prevent clients from having to take directly contrary positions in the two actions. If we were to accept the Attorneys’ position on this issue, it would defeat these purposes.
Finally, we resolve the conflict between the district court’s decision in Taracido and this Court’s earlier decision in Edwards. In Peat, Marwick, this Court distinguished Edwards:
*1055 The instant case is clearly distinguishable from our decision in Edwards v. Ford, 279 So.2d 851 (Fla.1973), in which the clients sued their attorneys in 1968 for legal malpractice in the drafting of a contract. In Edwards, we held that the cause of action had accrued in 1963, when the clients were advised that the contract was probably usurious. At that time, their lawyers admitted the error and agreed to correct it free of charge. The clients clearly had knowledge of their injury in 1963, and we held that the statute of limitations barred that action. In the instant case, however, Peat Marwick did not acknowledge its error at the time that the Lanes received their “Ninety-Day Letter.”
565 So.2d at 1327. Despite our attempt in Peat, Marwick to distinguish Edwards, we now recede from Edwards to the extent it is inconsistent with this opinion and Blumberg.
Accordingly, for reasons expressed in this opinion, we approve the decision below. The malpractice cause of action in this case did not accrue until the conclusion of the related or underlying judicial proceeding.
It is so ordered.
WELLS, C.J., and SHAW, and QUINCE, JJ., concur.
PARIENTE, J., concurs in result only with an opinion, in which ANSTEAD, J., concurs.
LEWIS, J., concurs in result only.