PARIENTE, J.,
concurring in result only.
Although I would approve the Third District’s opinion, I would not do so based on Blumberg v. USAA Casualty Insurance Co., 790 So.2d 1061 (Fla.2001). Blmnberg addresses the accrual of a cause of action against an insurance agent for an insurance coverage dispute, while this case addresses the accrual of a legal malpractice cause of action against a client’s attorney that must necessarily await the resolution of the underlying litigation in order to determine if there is redressable harm. I do not view the circumstance of an insurance agent negligence claim to be analogous to a malpractice suit against an attorney. Rather than treating this as a tag to Blmnberg, I would simply adopt the Third District’s reasoning in Taracido v. Perez-Abreu, Zamora & De La Fe, 705 So.2d 41 (Fla. 3rd DCA1997), which recognizes that all elements of an attorney malpractice claim, including redressable harm, must be established before the statute of limitations begins to run.
I do, however, agree with the majority that we should recede from Edwards v. Ford, 279 So.2d 851 (Fla.1973). Not only is Edwards a poorly-reasoned decision, but the result is unjust and inconsistent with sound public policy. In Edwards, the clients learned of the alleged legal malpractice from the other party’s lawyer before the third-party litigation had been instituted. See id. at 851-52. The clients’ own lawyer told the clients not to worry because he would correct the clients’ usurious contract free of charge. Then, after the related lawsuits involving the contracts were concluded, the attorney sued the clients for fees for' defending the usurious contract that the attorney had negligently drafted. When the clients counterclaimed for legal malpractice, the attorney asserted that the statute of limitations had run. See id. at 852. This Court found that the statute of limitations barred the clients’ malpractice action because the clients had learned of their damages pertaining to the malpractice prior to beginning the third-party litigation. See id. at 853.
*1056 I also agree with the majority’s focus on redressable harm. In many cases, damages will be speculative at best until the related third-party litigation is concluded. As Judge Gersten stated in the Third District’s opinion in this case: “The existence of legal malpractice is often difficult to ascertain. A client should not be placed in the position of having to file a potentially baseless claim prematurely fearing that otherwise an action will be precluded by the statute of limitations.” Taracido, 705 So.2d at 43. Moreover, whether or not the client has suffered redressable harm can only be determined after the third-party litigation becomes final. See Bierman v. Miller, 639 So.2d 627, 628 (Fla. 3d DCA 1994).
Further, any other rule would, in all likelihood, cause the attorney-client relationship to be severed and also force the client to take inconsistent positions. For example, in this case, the clients would have been forced to defend their attorneys’ work in drafting the contracts during the third-party litigation, but to argue in the malpractice action that their attorneys’ work had been negligently performed. By severing the attorney-client relationship prematurely, the attorney who is most familiar with the transaction would be prevented from defending the client’s position in the third-party lawsuit because, once the lawsuit is filed against the attorney, a conflict of interest would assuredly arise.
Alternatively, I would not be adverse to adopting the procedure utilized in New Jersey where, although the statute of limitations begins to accrue when the client discovers damages attributable to the attorney’s negligence, the legal malpractice suit is stayed until the conclusion of the underlying third-party litigation. See Grunwald v. Bronkesh, 131 N.J. 483, 621 A.2d 459, 466-67 (1993). In effect, this is what occurred in Bierman, 639 So.2d at 628.
The second alternative is the Kentucky “continuous representation rule,” which is “a branch of the discovery rule.” Alagia, Day, Trautwein & Smith v. Broadbent, 882 S.W.2d 121, 122-26 (Ky.1994). Under the Kentucky Supreme Court’s reasoning, although the statute of limitations begins to run on the date the plaintiff was or reasonably should have been aware of the cause of action, the accrual of the cause of action is delayed while the attorney continues to represent the client if the representation relates to the same transaction or subject matter as the allegedly negligent acts. See id. As explained by the Kentucky Supreme Court:
The continuous representation rule is a branch of the discovery rule. In substance, it says that by virtue of the attorney-client relationship, there can be no effective discovery of the negligence so long as the relationship prevails. This recognizes the attorney’s superior knowledge of the law and the dependence of the client, and protects the client from an unscrupulous attorney.
Id. at 125. The Alagia Court further pointed out the “practical advantages” of this approach:
In a proper case, a negligent attorney may be able to correct or mitigate the harm if there is time and opportunity and if the parties choose such a course. Without it, the client has no alternative but to terminate the relationship, perhaps prematurely, and institute litigation. Finally, without the continuous representation rule, the client may be forced, on pain of having his malpractice claim become time-barred, to automatically accept the advice of a subsequent attorney, one who may be mistaken, over the advice of the current attorney. In such a circumstance, the client may *1057 be without any assurance that the latter attorney’s views are superior to those of the former, but must nevertheless choose between them.

Id.

Under either alternative, clients would no longer have to maintain inconsistent positions. See Grunwald, 621 A.2d at 466. Further, the attorneys who are most familiar with the underlying transaction may be able to continue to represent their clients. In fact, these attorneys would have an added incentive to zealously represent their clients’ positions because they potentially could avoid malpractice suits altogether if given the opportunity to correct or mitigate their clients’ damages. Finally, awaiting resolution of the third-party litigation prevents unnecessary speculation regarding clients’ damages.
ANSTEAD, J., concurs.