# Third District Court of Appeal

## State of Florida

Opinion filed April 25, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2037
Lower Tribunal No. 15-6907
_____

## Williams Island Ventures, LLC, et al.,
Appellants,

vs.

## Marcus Saiz de la Mora, in his capacity as Miami-Dade County Tax Collector,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Rennert Vogel Mandler & Rodriguez, P.A., Thomas S. Ward and Jill Nexon Berman, for appellants.

Abigail Price-Williams, Miami-Dade County Attorney, and Jorge Martinez-Esteve and Daija Page Lifshitz, Assistant County Attorneys, for appellee.

Before SUAREZ, FERNANDEZ, and SCALES, JJ.

FERNANDEZ, J.

Plaintiffs Williams Island Ventures, LLC; Merrick Park LLC; Northwestern Capital Corporation; Sunshine Gasoline Distributors, Inc.; Sunshine Dade Investments, LLC; Coral Gables Luxury Holdings, LLC; Baptist Health South Florida, Inc.; Terra Grove Communities, LLC; Terra Doral Commons Commercial, LLC; and Terra Doral Commons Residential, LLC (collectively, "the taxpayers") appeal the trial court's Final Order Granting Marcus Saiz de la Mora's Motion to Dismiss Second Amended Complaint with Prejudice. We reverse and remand because we agree with the taxpayers that they pled legally sufficient claims which should not have been dismissed with prejudice on a motion to dismiss.

Before July 1, 2011, a Miami-Dade County taxpayer was not required to pay any taxes in order to challenge an *ad valorem* tax assessment. The Florida Legislature then enacted section 194.014, Florida Statutes (2011), effective July 2011, which required taxpayers filing petitions to challenge a tax assessment to pre-pay at least 75% of the *ad valorem* taxes they were challenging. Section 194.014(1)(a), Fla. Stat. (2011), reads in part: "A petitioner before the value adjustment board who challenges the assessed value of property must pay all of the non-ad valorem assessments and make a partial payment of at least 75 percent of the *ad valorem* taxes… ."

The section further provided that a taxpayer is entitled to receive interest on the pre-paid *ad valorem* taxes that were due, if a taxpayer succeeded in obtaining a reduction of an assessment. Section 194.014(2), Fla. Stat. (2011), stated:

> If the value adjustment board determines that the petitioner owes ad valorem taxes in excess of the amount paid, the unpaid amount accrues interest at the rate of 12 percent per year… until…paid. If the value adjustment board determines that a refund is due, the overpaid amount accrues at the rate of 12 percent per year…until a refund is due. [1]

When section 194.014 became effective, Fernando Casamayor was the Miami-Dade tax collector. After taxpayers filed petitions, Casamayor remitted taxpayers 12% interest on refunds resulting from assessment reductions. The refunds were triggered by a ruling of the Value Adjustment Board ("VAB") special magistrate after a hearing, as well as a reduction in assessments that resulted from

---

[1] Section 194.014 was amended in 2016, effective July 1, 2016, and subsection (2) of the statute currently reads:

(2) If the value adjustment board **or the property appraiser** determines that the petitioner owes ad valorem taxes in excess of the amount paid, the unpaid amount accrues interest at an annual percentage rate equal to the bank prime loan rate on July 1, or the first business day thereafter if July 1 is a Saturday, Sunday, or legal holiday, of the year, beginning on the date the taxes became delinquent pursuant to s. 197.333 until the unpaid amount is paid. If the value adjustment board or the property appraiser determines that a refund is due, the overpaid amount accrues interest at an annual percentage rate equal to the bank prime loan rate on July 1, or the first business day thereafter if July 1 is a Saturday, Sunday, or legal holiday, of the tax year, beginning on the date the taxes became delinquent pursuant to s. 197.333 until a refund is paid. …

§ 194.014, Fla. Stat. (2016) (emphasis added).

3

the execution of a Petition Withdrawal Agreement without a hearing. Thus, the phrase in the statute, "determines that a refund is due" by the VAB, applied whether or not there was a formal hearing.

On May 1, 2014, Marcus L. Saiz de la Mora succeeded Casamayor as the Miami-Dade tax collector. In 2014, Saiz de la Mora unilaterally decided that he would pay taxpayers interest on refunds only if an assessment was reduced after: 1) a formal VAB hearing, and 2) the issuance of a formal, written VAB ruling reducing the assessment. Consequently, in 2014, Saiz de la Mora stopped paying interest on refunds owed to taxpayers who executed Petition Withdrawal Agreements, reasoning that the VAB in these cases had not "determined" that a refund was due. Saiz de la Mora stopped paying interest on refunds related to petitions for the 2011, 2012, and 2013 tax years, even when the taxpayers' assessments were reduced during the time that the previous tax collector, Casamayor, was in office.

Starting in January 2015, Saiz de la Mora further unilaterally decided that interest payments paid to taxpayers who executed Petition Withdrawal Forms when Casamayor was the tax collector were paid erroneously. Saiz de la Mora sent written demand letters demanding these taxpayers refund the interest payments to Saiz de la Mora (the "clawback taxpayers") and threatening "additional collection enforcement" actions if the clawback taxpayers failed to refund the interest

payments. Saiz de la Mora also listed the interest payments he sought to claw back on the tax collector's website as taxes owed by the taxpayer. These interest payments show up in title searches and are clouds on the title of taxpayers' real property.

Thereafter, on March 24, 2015, ten clawback taxpayers and one interest-owed taxpayer filed a class action suit in the trial court against Saiz de la Mora on behalf of all similarly situated taxpayers. The interest-owed taxpayers sued for: (i) declaratory judgment (Count I); (ii) breach of contract (Count IV); and (iii) promissory estoppel (Count VI). The clawback taxpayers sued for: (i) declaratory judgment (Count II); (ii) injunction (Count III); (iii) breach of contract (Count IV); (iv) slander of title (Count V); and (v) promissory estoppel (Count VI). The class of affected taxpayers, approximately 30,000, was defined as "(i) all taxpayers who should have received interest from the Tax Collector for overpayment of their 2011, 2012, and 2013 assessments and (ii) all taxpayers who received interest for these tax years and should not be required to repay such interest to the [Current] Tax Collector." That same day, the taxpayers filed a request for production on Saiz de la Mora and subpoenaed the records of the Miami-Dade Property Appraiser records custodian.

In response, Saiz de la Mora filed a "Motion for Entry of a Protective Order Regarding Subpoena of Non-Party Property Appraiser, Motion for Order Related

5

to Costs, or Motion for Status Conference," seeking to stay the property appraiser's deposition so that the trial court could first determine some underlying issues. However, with this motion, Saiz de la Mora did not move to stay any discovery the taxpayers propounded on him. After the hearing on this motion, the trial court granted the current tax collector's motion for protective order and entered a stay "barring discovery related to the putative class until the underlying legal issues raised in the plaintiffs' amended complaint are resolved." The taxpayers moved for reconsideration of the stay order. Saiz de la Mora moved for clarification of the stay order and filed a motion to dismiss the amended complaint. The trial court also stayed all discovery until the court ruled on the tax collector's motion to dismiss the amended complaint.

After the taxpayers filed a memorandum in opposition to Saiz de la Mora's motion to dismiss, the trial court granted the tax collector's motion to dismiss without prejudice. The taxpayers then filed their Second Amended Complaint. Saiz de la Mora moved to dismiss this complaint, which the trial court granted, this time with prejudice.

The taxpayers now appeal the trial court's final dismissal order and seek reinstatement of Counts I, II, III, V and VI. They contend on appeal that they pled legally sufficient claims and that their claims should not have been dismissed with prejudice on a motion to dismiss.

We review orders granting a motion to dismiss under a *de novo* standard of review. Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1089 (Fla. 3d DCA 2014). "A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues…." The Fla. Bar v. Greene, 926 So. 2d 1195, 1199 (Fla. 2006). When ruling on a motion to dismiss, a trial court must accept all factual allegations as true. Minor v. Brunetti, 43 So. 3d 178, 179 (Fla. 3d DCA 2010). The trial court must construe all reasonable inferences in favor of the pleader. Id. Statutory construction is also reviewed *de novo*. Zingale v. Powell, 885 So. 2d 277, 280 (Fla. 2004).

The taxpayers argue that section 194.014 entitled the interest-owed taxpayers to interest on all their appeals of overpayment of *ad valorem* taxes, and that section 194.014 does not state that a condition precedent to the interest-owed taxpayers' entitlement is the VAB's issuance of a written "decision" granting a taxpayer's petition. The taxpayers also contend that Saiz de la Mora was not authorized to claw back any interest payments that he (or Casamayor) had already made to the taxpayers as a result of a reduction in the taxpayers' assessments after they filed petitions challenging their tax assessments.

We find that the taxpayers base their claims on a valid interpretation of section 194.014. Section 194.014(1)(a), states that taxpayers must file petitions and pay 75% of their *ad valorem* taxes to be eligible to receive 12% interest on all

overpaid amounts. Before it was amended in 2016, section 194.014(2) further stated, "[i]f the value adjustment board determines that a refund is due.…" However, section 194.014 does not define what action constitutes a VAB "determination" for purposes of triggering an entitlement to interest. Section 193.122(1), Florida Statutes (2014), makes only the VAB responsible for making the final certification of the tax roll. As the taxpayers correctly contend, when reading these two statutes together, it is evident that it is the VAB's action of certifying the final tax roll that determines the assessments of each property. This then determines the amount of taxes that the tax collector is entitled to collect and the taxpayers' entitlement to interest under section 194.014.

In addition, the final tax roll requires taxpayers to take certain steps to collect their reimbursement and includes assessments that are reduced by the taxpayers' written agreements with the VAB and the property appraiser. The reduction occurs after taxpayers file petitions challenging their assessments but before the VAB hearings are held. The Broward County tax collector and, until recently, the Miami-Dade tax collector have used and adopted this interpretation. We agree with the taxpayers that the trial court erred in dismissing their lawsuit against the tax collector with prejudice on a motion to dismiss because their claims are based on a valid interpretation of section 194.014.

Whether the tax collector has a right or duty to claw back overpayments depends on an interpretation of statutory provisions and reasonable inferences drawn from those provisions. See Escambia Cty v. Bell, 717 So. 2d 85, 87 (Fla. 1st DCA 1998) ("[T]he Tax Collector only has such authority as is clearly conferred by statute or is necessarily implied from express statutory powers or duties."). We see no reason to decide that issue in this appeal. Whether the tax collector was permitted to record a lien on the taxpayers' property was subject to determination by the trial court, as were the clawback taxpayers' claims in Counts II, III, V, and VI, and the relevant counts should not have been dismissed.[2]

---

[2] The current tax collector contends that the 2016 amendment to section 194.014(2) supports the trial court's determination that the prior version of the statute does not entitle taxpayers to interest if they obtained a reduction of their assessments by executing a Petition Withdrawal Form. The amended statute, effective July 1, 2016, now states, in pertinent part: "If the value adjustment board or the property appraiser determines that a refund is due, the overpaid amount accrues interest at an annual percentage rate equal to the bank prime loan rate on July 1, . . . until a refund is paid."

§ 194.014(2), Fla. Stat. (2016).

Taxpayers contend in their Reply Brief filed on August 17, 2016 that they did not discuss the amendment in their Initial Brief filed on December 17, 2015 because the amendment was enacted on March 25, 2016 and became effective July 1, 2016. We agree with the taxpayers that this amendment supports their position, rather than the current tax collector's. The word "determines" was not changed in the 2016 version of the statute thus, it has the same meaning as in the previous version. Furthermore, as the taxpayers indicate in their Reply Brief, the current tax collector concedes in his Answer Brief that, under the 2016 version, "interest is now payable upon settlements with the Property Appraiser." We agree with the taxpayers that if these settlements or Petition Withdrawal Agreements are a determination that a refund is due under the amended statute, then it stands that they are also a

9

Finding that the taxpayers' claims are based on a valid interpretation of section 194.014, we now turn to whether the taxpayers pled factual allegations to satisfy each of the elements of their claims. In Count I of the Second Amended Complaint, the interest-owed taxpayers sought a declaratory judgment from the trial court that under section 194.014(2), "any taxpayer who receives a refund due to a reduction in his, her or its assessment as a result of filing a Petition is entitled to statutory interest thereon, regardless of whether a formal VAB hearing occurred." In Count II, the clawback taxpayers sought a declaration that the current tax collector "is not entitled to 'claw back' previously paid interest on such reductions." The taxpayers pled thirty-two paragraphs of factual allegations in support of these claims.

"The test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all." Dent v. Belin, 483 So. 2d 61, 62 (Fla. 1st DCA 1986). As such, the trial court was required to decide whether Counts I and II of the Second Amended Complaint contained the required factual allegations that would support the taxpayers' entitlement to a declaration, regardless of what the trial court's ultimate decision would be on the issue. Thus,

determination under the previous version of the statute.

10

the taxpayers' factual allegations were sufficient to satisfy the motion to dismiss standard. See id. (finding a party is entitled to a declaration when that party pleads the necessary factual allegations for each element of a declaratory judgment claim).

However, the trial court dismissed the declaratory judgment claims with prejudice and also declared what the rights of the taxpayers were under section 194.014. The trial court erred in doing so, as it was premature to decide whether the taxpayers would succeed on their claims. Accordingly, we reverse on Counts I and II because the taxpayers stated a cognizable declaratory judgment claim and because the trial court was not authorized to rule on the merits of the taxpayers' claims at the beginning of the case in response to Saiz de la Mora's motion to dismiss. Dent, 483 So. 2d at 62.

We turn next to the three other claims raised by the taxpayers in their Second Amended Complaint. In Count III, the clawback taxpayers sought an injunction requiring the current tax collector to "immediately suspend efforts to claw back interest already paid to the clawback taxpayers in connection with refunds where no VAB hearing was held" and "immediately delete from [the current tax collector's] website references to unpaid taxes where the amounts listed are for interest he seeks to claw back." In Count V, the clawback taxpayers sought damage for slander of title to their property from the current tax collector's

11

publication on its website that the clawback taxpayers owe "taxes" on their respective properties. However, as the taxpayers correctly contend, these "taxes" are not really taxes but are the interest payments that the previous tax collector paid to the clawback taxpayers. Lastly, in Count VI, the taxpayers sued for promissory estoppel, alleging they executed Petition Withdrawal Forms and thus gave up their rights to have their tax appeals decided at formal VAB hearings and detrimentally relied on the prior tax collector's policy of paying interest when a taxpayer executed a Petition Withdrawal Form.

The record reflects that the current tax collector's Second Motion to Dismiss did not argue that taxpayers failed to plead facts that, if proven, would establish the elements of these claims. Because the required elements of Counts III, V, and VI were all pled, the trial court erred in granting the motion to dismiss with respect to these counts.

Furthermore, in its Second Motion to Dismiss, the current tax collector argued with respect to the estoppel claim that the acts of the previous tax collector in making interest payments that the taxpayers relied on were *ultra vires* acts that did not bind the current tax collector. This argument is an affirmative defense. Haven Fed. Sav. & Loan Ass'n v. Kirian, 579 So. 2d 730, 733 (Fla. 1991). A trial court may not consider affirmative defenses when deciding a motion to dismiss. Lonestar Alt. Sol., Inc. v. Leview-Boymelgreen Soleil Developers, LLC, 10 So. 3d

1169, 1172 (Fla. 3d DCA 2009). Consequently, the trial court erred in considering it when ruling on the current tax collector's Second Motion to Dismiss.

Lastly, the trial court also committed reversible error by granting the current tax collector's Second Motion to Dismiss while the taxpayers' discovery on the current tax collector and property appraiser was pending. Frankel v. City of Miami Beach, 340 So. 2d 463, 465, 470 (Fla. 1976). A lawsuit becomes a class action when the trial court enters a class certification order. Harrell v. Hess Oil & Chem. Corp., 287 So. 2d 291 (Fla. 1973). However, the plaintiff must first allege the elements outlined in Harrell. A trial court will not enter a certification order until the plaintiff satisfies certain pleading requirements imposed by the Florida Supreme Court. Frankel, 340 So. 2d at 465. Florida Rule of Civil Procedure 1.220(d)(1) authorizes plaintiffs to conduct discovery prior to certification.

Here, the trial court dismissed with prejudice the taxpayers' Second Amended Complaint while the taxpayers' motion for certification was pending. The trial court erred in imposing a stay of all pre-certification discovery because the information needed to satisfy the class action pleading requirement could only be obtained through discovery. For example, the taxpayers claim they were unable to obtain: fully executed Withdrawal Agreements for tax years of 2011-2013; the property appraiser's correspondence with the tax collector's office regarding reductions that resulted from executed Withdrawal Forms for the 2011-2013 tax

13

years; each certification and recertification of the tax roll for the 2011-2013 tax years; any backup documents the property appraiser used to correct the tax roll for the 2011-2013 tax years; the current tax collector's internal documents that outlines its policy regarding paying interest on reduced assessments; documents related to all refunds issued regarding Withdrawal Forms for the 2011-2013 tax years; and the current tax collector's correspondence with the property appraiser related to reductions that resulted from executed Withdrawal Forms for the 2011-2013 tax years. Discovery would have allowed the taxpayers to obtain this information and, thus, satisfy the class action pleading requirements.

Accordingly, the trial court erred in dismissing the taxpayers' claim with prejudice, under the standard applied to a motion to dismiss. We thus reverse the Final Dismissal Order, the Stay Order and the Reconsideration Order, and reinstate Counts I, II, III, V, and VI of the taxpayers' Second Amended Complaint.

Reversed and remanded for further proceedings consistent with this opinion.