# Third District Court of Appeal

## State of Florida

Opinion filed February 20, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-938
Lower Tribunal No. 16-23613
_____

**Matt Papunen,**
Appellant,

vs.

**Bay National Title Company,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

The Orlofsky Law Firm, P.L., and Alexander S. Orlofsky, for appellant.

Boyd Richards Parker & Colonnelli, P.L., and W. Todd Boyd and Gissell Jorge, for appellee.

Before SALTER, LINDSEY and HENDON, JJ.

SALTER, J.

Matt Papunen ("Buyer") appeals a final order dismissing with prejudice his complaint against Bay National Title Company ("Bay National").[1] The Buyer alleged that although Bay National confirmed at closing Seller's title and the absence of post-foreclosure appellate or other legal challenges to the Seller's title, Bay National's title examination negligently missed a post-judgment, duly-docketed motion to vacate the foreclosure judgment and challenge the Seller's title.

We reverse the order of dismissal with prejudice, and remand for further proceedings.

Facts and Proceedings Below

The case below arises from the sale of a residence by a lender following the foreclosure of a mortgage on the residence and the issuance of a certificate of title to the lender. The lender, through its attorney-in-fact JPMorgan Chase Bank, National Association ("Seller"), then placed the property for sale.

The Buyer and Seller entered into an "Indemnity and Hold Harmless Release" (the "Release") signed and notarized by Buyer on June 19, 2015. The form identified as "Seller Releasees" the Seller, Bay National, their respective "parent and

[1] Inexplicably, the Buyer's notice of appeal from the final order identifies the title insurer, Fidelity National Title Insurance Company, as the defendant/appellee, rather than the title agent, Bay National Title Company. Bay National Title Company was the sole defendant below, the party identified in the final order itself, and the "authorized signatory" shown on the title insurance forms at issue. The appellee's brief identifies the defendant/appellee variously as "Bay National Title Insurance Company" and "Bay National Title Company."

2

subsidiary and affiliate companies," and the "present and former officers, directors, agents, employees, stockholders, owners, members, managers, attorneys, predecessors, successors, assigns, insurers and servicing agents of each such entity."

The recitals, disclosures, and terms of the Release identified various risks: "the Property may have Occupants or Claimants occupying the Property," and there might be agreements or rent concessions relating to any such Occupant or Claimant. The Release also addresses the possibility of rent control violations, unrecorded prepaid rent, or security deposits with tenants that might not be transferred as part of the sale. Finally, the Release addresses the condition of the property being sold, with the Seller disclaiming liability for damages that might be caused by repairs or alterations to the property by an occupant prior to the closing.

Other provisions of the Release pertain to post-closing claims of the former owner:

> WHEREAS . . . The delivery of possession shall be subject to the rights of any Occupants or Claimants and any right of confirmation, redemption or similar legal right of the former owner, its successors and assigns. Seller shall not be required to bring any action to evict, relocate, dispossess or determine the rights of any Occupant or Claimant before, on or after closing. The existence of any Occupants or Claimants, or claims by such persons, shall not give right to any rights to terminate the Agreement by Buyer or to give Buyer the right to raise any objection to Seller's title.
>
> ….
>
> In consideration of Seller's agreement to proceed with the closing of the sale of the Property to Buyer, and Closing Agent's agreement to

conduct the Closing of the sale of the Property notwithstanding the aforementioned items, Buyer hereby agrees as follows:

….

2. Buyer agrees to release, indemnify, defend, and forever hold the Seller Releasees harmless in all respects from and against any manner of action, cause of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bill, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, interest, penalties, damages, judgments, executions, claims and demands whatsoever, in law or in equity, arising out of, in connection with or relating to the occupancy of the property or the sale of the Property to Buyer.

….

4. It is the intent of Buyer, and Seller that this Release survive any closing of the sale of the Property to Buyer.

A week after the Release was executed and delivered, the Buyer and the Seller entered into a standard form of "'As Is' Residential Contract for Sale and Purchase" (the "Contract"). Although Bay National was a designated "Seller Releasee" in the Release executed by the Seller and Buyer a week earlier, the Contract specified that the Seller would deliver and pay for an owner's title policy to be issued to the Buyer "insuring Buyer's marketable title to the Real Property," subject only to six types of exceptions typical in such transactions, including land use matters, plat restrictions, mineral rights of record, unplatted public utility easements of record, taxes for the year of closing and subsequent years, and assumed and purchase money mortgages. The Contract provisions did not include an exception for certain docketed filings in

4

the foreclosure case: a notice of appeal, or a motion to vacate or set aside the final judgment and foreclosure sale through which the Seller had obtained title.

The Seller and Buyer closed the sale transaction on July 24, 2015. In conformance with the terms of the Contract, the Seller and Bay National delivered a markup of an earlier title insurance commitment issued and signed by Bay National. Bay National marked up Schedule B, Section 1, of the commitment to confirm that requirement 10 had been satisfied:

> Issuing agent must request from the [insurer, Fidelity National Title Insurance Company] (or perform themselves) an update and review of the foreclosure docket for the proceeding [identifying the foreclosure case in which the Seller obtained title] between the effective date of this report and one (1) business day prior to closing, to verify that no appeal or motion to vacate or set aside the proceedings has been filed.

In its complaint, the Buyer alleged that Bay National negligently failed to perform the specified "update and review of the foreclosure docket," and failed to discover a motion to vacate the final judgment of foreclosure. The Buyer alleged that he incurred substantial damages over a protracted period as he prosecuted legal proceedings to overcome the motion to vacate.

Bay National moved to dismiss on the basis of the broad language in the Release.[2] The Buyer contended that the insurance commitment delivered at closing

---

[2] The Release, Contract, title commitment, and marked-up commitment delivered to the Buyer at closing were attachments to the Complaint, and were thus within the "four corners rule." Jester v. Pawley, 245 So. 3d 859, 860 (Fla. 3d DCA 2018).

pursuant to the terms of the Contract (and over a month after the Release was executed) imposed a separate duty on the part of Bay National that was outside the scope of the general exculpatory provisions in the Release. The Buyer argued that Bay National's argument rendered the Contract provisions regarding title, and the title commitment itself, entirely nugatory—a result that could not have been intended.

The trial court heard argument on the motion to dismiss and the Buyer's opposition to the motion, and granted the motion to dismiss, declining to allow the Buyer a right to amend. This appeal followed.

Analysis

We review an order granting a motion to dismiss with prejudice de novo. Williams Island Ventures, LLC v. de la Mora, 246 So. 3d 471, 475 (Fla. 3d DCA 2018). "In determining the merits of a motion to dismiss, the trial court must limit itself to the four corners of the complaint, including any attached or incorporated exhibits, assuming the allegations in the complaint to be true and construing all reasonable inferences therefrom in favor of the non-moving party." Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1089 (Fla. 3d DCA 2014).

The sweeping exculpatory language within the earlier release is facially inconsistent with the more specific title insurance obligations of the Seller in the later Contract and marked-up title commitment delivered to the Buyer in accordance

6

with the Contract. "[I]t is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." Kel Homes, LLC v. Burris, 933 So. 2d 699, 703 (Fla. 2d DCA 2006) (quoted with approval in Idearc Media Corp. v. M.R. Friedman and G.A. Friedman, P.A., 985 So. 2d 1159, 1161 (Fla. 3d DCA 2008)).

The Buyer is correct that Bay National's and the trial court's interpretation of the documents simply nullifies the contract provisions requiring the Seller to provide title insurance and to complete a review of the foreclosure docket. The Seller's Release document is plainly written for the protection of the Seller, while Bay National's title duties are just as plainly written for the protection of the Buyer. The reconciliation of these provisions leads ineluctably to the conclusion that the motion to dismiss should not have been granted with prejudice.

That said, Bay National has also cited provisions of the title commitment and various federal cases[3] holding that the Buyer's claims must be confined exclusively to contract rather than tort. We decline to consider or rule upon that argument, but the point underscores that the right to amendment should not have been prohibited

---

[3]  These authorities were not cited to the trial court in Bay National's motion to dismiss.

7

so quickly (the Seller had never amended its original complaint when it was precluded from filing even a first amended complaint).

Leave of court to amend "shall be given freely when justice so requires," Florida Rule of Civil Procedure 1.190(a), and "any doubts should be resolved in favor of the amendment." Overnight Success Const., Inc. v. Pavarini Const. Co., Inc., 955 So. 2d 658, 659 (Fla. 3d DCA 2007).

The final order of dismissal with prejudice is reversed, and the action is remanded to the circuit court for further proceedings.