# Third District Court of Appeal

## State of Florida

Opinion filed September 7, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1627
Lower Tribunal No. 20-2762
_____

**Igor Mikhaylov, et al.,**
Appellants,

vs.

**Bilzin Sumberg Baena Price & Axelrod LLP,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Ratzan Weissman & Boldt, and Kimberly L. Boldt and Ryan C. Tyler (Boca Raton); William Petros Law, and William L. Petros and Brett J. Novick, for appellants.

Podhurst Orseck, P.A., and Peter Prieto and Matthew P. Weinshall, for appellee.

Before FERNANDEZ, C.J., and LOGUE and BOKOR, JJ.

BOKOR, J.

Igor Mikhaylov appeals the trial court's final judgment of dismissal in favor of Bilzin Sumberg Baena Price & Axelrod LLP.[1]  The trial court granted Bilzin's motion to dismiss concluding that the action was barred by the applicable statute of limitations.  As explained below, we agree with the trial court's extensive and well-reasoned analysis.

## BACKGROUND

In 2010, Mikhaylov, a Russian national residing in Russia, and Anatoly Zinoviev, a Russian national residing in Florida, met and formed a business relationship.  A few years later, Mikhaylov and Zinoviev embarked on a real estate development project in Broward County (the Seneca Project) overseen by Zinoviev as managing partner.  Mikhaylov invested more than $16 million in purchasing the land and developing a retail center on the land.  Mikhaylov hired Bilzin to provide legal advice and prepare the agreements necessary to protect his financial interests, including a trust agreement, a partnership agreement, and a secured promissory note.

Eventually, the Mikhaylov-Zinoviev relationship soured.  Mikhaylov raises claims of conspiracy, fraud, and theft due to Zinoviev's alleged diversion of funds from the Seneca Project to himself and Genna Demircan, Zinoviev's domestic partner. Mikhaylov claims that, between 2015 and 2017,

---

[1] We have jurisdiction.  Fla. R. App. P. 9.030(b)(1)(A).

aided by Bilzin,[2] Zinoviev and Demircan manipulated him into signing documents removing him from the partnership and the trust and divesting him of the profits of the venture. As a result of their purported scheme, Zinoviev and Demircan assumed corporate control over the finances of both the lender and the borrower in the Seneca Project.

Mikhailov claims that upon uncovering the alleged scheme, he initiated a probate action to remove Zinioviev and Demircan from the trust and a civil action alleging fraud against Zinoviev and his co-conspirators.[3]

---

[2] As shown by the trial court's examination of the operative complaint, Mikhaylov was aware of Bilzin's alleged malpractice or negligence as early as November 2017:

> These allegations clearly demonstrate that as of November 2017, Mikhaylov was aware of the fact that: (a) Zinoviev and Demircan had stolen his 1% GPI; (b) Zinoviev and Demircan had improperly issued a substantial capital call; and (c) Zinoviev and Demircan had used the authority provided by the documents Bilzin allegedly prepared to defraud him. He also was aware that due to Bilzin's alleged negligence the Trust had no collateral securing its debt. Recognizing that he had been severely injured as a result of these actions, and that Bilzin had failed to protect his interests, in November 2017 Mikhaylov attempted to remove "Demircan as trustee."

[3] As part of the civil action, the court appointed a receiver who conducted a forensic accounting of the Seneca Project. As a result, on August 6, 2019, the receiver filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on behalf of East Coast Invest, an entity funded by Mikhaylov to purchase property for the Seneca Project. On motion from the chapter 11 trustee, the bankruptcy court entered an order converting the case to a chapter 7 proceeding and later entered an order granting the

In February 2020, Mikhaylov instituted the instant action against Bilzin for malpractice and breach of fiduciary duty alleging that Bilzin, as counsel for Mikhaylov and the trust, failed to protect Mikhaylov and the trust's interests by "failing to properly counsel [their] clients with respect to various agreements/transactions at issue, and failing to properly draft those agreements in a manner consistent with the clients' best interest[s]." In response, Bilzin filed a motion to dismiss based upon the expiration of the applicable statute of limitations. The trial court granted Bilzin's motion and dismissed the cause with prejudice. This appeal followed.

## ANALYSIS

"We review an order granting a motion to dismiss *de novo*." Fed. Deposit Ins. Co. v. Nationwide Equities Corp., 304 So. 3d 1240, 1243 (Fla. 3d DCA 2020) (citing Williams Island Ventures, LLC v. de la Mora, 246 So. 3d 471, 475 (Fla. 3d DCA 2018)). Accordingly, we examine when the applicable statute of limitations began to run on Mikhaylov's legal malpractice claims.[4] "A legal malpractice action has three elements: 1) the

---

trustee's application to list and sell the subject real property. Mikhaylov argues that despite being aware of Bizlin's alleged malpractice as early as November 2017, the claim in the underlying malpractice action won't finally accrue until resolution of the bankruptcy petition.

[4] Per section 95.031, Florida Statutes, "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." Subsection (1) states, "[a] cause of action accrues when

4

attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp., 969 So. 2d 962, 966 (Fla. 2007) (citing Kates v. Robinson, 786 So. 2d 61, 64 (Fla. 4th DCA 2001)). The question here hinges on when the losses occurred, and therefore, when the clock starts ticking for statute of limitations purposes. The parties disagree as to whether this question should be determined by applying the "finality accrual rule" or the "first-injury rule."

> The general rule, of course, is that where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. **It is not material that all the damages resulting from the act shall have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.** Lower courts have labeled this the "first injury" rule. However, a special rule applies when the plaintiff's damages exist by virtue of an enforceable court judgment. In these circumstances, the statute of limitations begins to run when the underlying judgment becomes final. We now label this the "finality accrual rule."

---

the last element constituting the cause of action occurs." Neither party disputes that Mikhaylov's claim is governed by the two-year statute of limitations set forth in section 95.11(4)(a), Florida Statutes, which applies to a professional malpractice claim.

5

Kipnis v. Bayerische Hypo-Und Vereinsbank, AG, 202 So. 3d 859, 862 (Fla. 2016) (emphasis added) (internal quotations and citations omitted).

Mikhaylov argues that the trial court erred by applying the first-injury rule to his transactional legal malpractice case and relies on several Florida Supreme Court cases. See Larson & Larson, P.A. v. TSI Indus., Inc., 22 So. 3d 36, 41 n.4 (Fla. 2009) (explaining the application of the finality accrual rule to transactional malpractice cases); see also Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido, 790 So. 2d 1051 (Fla. 2001); Law Office of David Stern, P.A., 969 So. 2d 962 (Fla. 2007). While the cases cited support the application of the finality accrual rule to transactional malpractice cases in circumstances where the existence of possible malpractice hasn't been established, we agree with the trial court that such cases don't apply to the facts present here. See Kipnis, 202 So. 3d at 862 ("To determine whether to apply the [finality accrual] rule in any particular case, we have considered a series of factors and applied the finality accrual rule where those factors favored the rule's application.").

The finality accrual rule explains that "a cause of action for legal malpractice does not accrue until the underlying legal proceeding has been completed on appellate review **because, until that time, one cannot determine if there was any actionable error by the attorney**." Peat,

6

Marwick, Mitchell & Co. v. Lane, 565 So. 2d 1323, 1325 (Fla. 1990) (emphasis added). Therefore, in Burgess v. Lippman, 929 So. 2d 1097 (Fla. 4th DCA 2006), our sister court quashed a trial court's order denying a motion to abate a legal malpractice action where "[r]esolution of those [underlying] claims **will determine whether the damages claimed by Lippman are causally related to the malpractice claims**." Id. at 1099 (emphasis added). The court reasoned that "[t]his is necessarily so because if Asper did not convert Lippman's funds, then there would be no damages suffered by Lippman caused by the alleged failure to warn by Burgess." Id.

Here, unlike in Lippman, the trial court properly concluded that the resolution of the bankruptcy case would not determine whether Bilzin committed malpractice. As the trial court noted, "[t]he alleged malpractice occurred, and damages were undeniably suffered as a proximate cause of that alleged malpractice. The only thing the related [bankruptcy] litigation may do is reduce, or possibly eliminate, the damages already suffered by Plaintiffs." Unlike cases relying upon the final accrual rule, the bankruptcy case provides, at best, mitigation of the loss that already occurred. But it wouldn't change whether the alleged malpractice occurred, or when the action accrued. As explained by the trial court, the case accrued when Mikhaylov suffered damage from the claimed malpractice:

7

Plaintiffs suffered economic loss due to Bilzin's alleged negligence more than two years before commencing this case. And the fact that they may (or may not) recover some (or all) of those losses via third party litigation does not alter an analysis of when this malpractice claim accrued. It accrued when Plaintiffs first suffered a concrete loss (*i.e.*, injury) as a proximate cause of Bilzin's malpractice. Not a day later.

Affirmed.